**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Zaid SHABAZZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 28, 2011.

Filed April 18, 2011.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: DONOHUE, MUNDY, and FITZGERALD,* JJ.

OPINION BY MUNDY, J.:

Appellant, Zaid Shabazz, appeals from the order entered April 5, 2010 by the Court of Common Pleas of Philadelphia County, denying his petition for writ of *certiorari* to the Municipal Court of Philadelphia, following his conviction and sentencing for driving under the influence of a controlled substance. Appellant alleges the Municipal Court erred in denying of his pretrial suppression motion. We affirm.

We summarize the relevant factual and procedural history as contained in the certified record as follows. On November 28, 2008, at approximately 1:30 p.m., Officer Mustaff Beyah of the Philadelphia Police Department observed Appellant driving south on 63rd Street in Philadelphia, noting objects hanging from the inside central rearview mirror. Officer Beyah and his partner initiated a traffic stop for suspected violation of the provision of the Vehicle Code prohibiting driving while objects materially obstruct the driver's view. *See* 75 Pa.C.S.A. § 4524(c). As a result of the stop, the police issued a traffic citation for violation of 75 Pa.C.S.A. § 4524(a).[1] Also as a result of the stop, Appellant was arrested and charged with driving under the influence of a controlled substance (DUI)[2] by complaint lodged with the Mu-

---

* Former Justice specially assigned to the Superior Court

1. In his testimony at the suppression hearing, Officer Beyah repeatedly referenced 75 Pa. C.S.A. § 4524(a) (prohibiting driving with item upon the windshield that materially obstructs the operator's view) instead of 75 Pa. C.S.A. § 4524(c) (similarly prohibiting items suspended from the center rearview mirror). The trial court also references 75 Pa.C.S.A. § 4524(a) in its Pa.R.A.P. 1925(a) opinion. It is clear from the context of the whole record that in both cases 75 Pa.C.S.A. § 4524(c) was intended.

2. 75 Pa.C.S.A. §§ 3802(d)(1), 3802(d)(2).

nicipal Court of Philadelphia.[3]

On June 18, 2009, the Municipal Court of Philadelphia held a hearing on Appellant's pretrial application for relief, seeking suppression of all physical evidence obtained as a result of the traffic stop on the grounds that the police lacked reasonable suspicion to perform the stop. N.T., 6/18/09, at 4. *See* Pa.R.Crim.P. 1005 (establishing procedure for pretrial relief, including suppression of evidence, before Philadelphia Municipal Courts). At the conclusion of the hearing, Municipal Court Judge Thomas Nocella, denied Appellant's pretrial application for relief but granted a defense motion for recusal. N.T., 6/18/09, at 23–24. On November 18, 2009, Municipal Court Judge Bradley K. Moss, in a stipulated trial, found Appellant guilty of DUI. On February 3, 2010, Appellant was sentenced to a term of confinement of 72 hours to six months plus fine and costs. Certified Record (C.R.) at D1.

Pursuant to Pa.R.Crim.P. 1006(1)(a) and 1008, Appellant filed a petition for writ of *certiorari* in the Court of Common Pleas of Philadelphia County, seeking review of Judge Nocella's denial of Appellant's suppression motion. C.R. at D3. Upon review of the Municipal Court record, Judge Frank Palumbo denied the writ of *certiorari* on April 5, 2010. Appellant filed a notice of appeal to this Court on April 12, 2010. C.R. at D4. Appellant filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on April 29, 2010, and Judge Palumbo file a Rule 1925(a) opinion on June 10, 2010. C.R. at D6, D7.

Appellant raises a single issue for our review.

Did not the police lack reasonable suspicion to stop [A]ppellant for a violation of the Motor Vehicle Code in that the objects hanging from his rearview mirror did not materially obstruct his vision through the front windshield?

Appellant's Brief at 3.

Appellant maintains the traffic stop initiated by the police officers was an investigatory stop unsupported by reasonable suspicion that a violation of section 4524(c) of the Motor Vehicle Code had occurred. Specifically, Appellant asserts that "the items hanging from [A]ppellant's rearview mirror, foam dice and air fresheners, could not be reasonably suspected of materially obstructing [A]ppellant's vision through his windshield." Appellant's Brief at 9.

■ We observe the following standard guiding our review.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Those properly supported facts are binding upon us and we may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Dixon,* 997 A.2d 368, 372–373 (Pa.Super.2010) (*en banc* ), *quoting Commonwealth v. Thompson,* 604 Pa. 198, 985 A.2d 928, 931 (2009) (internal quotes and citations omitted). "The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary

---

**3.** The facts relevant to the DUI arrest are not included in the certified record accompanying this appeal.

and our standard of review is de novo." *Commonwealth v. Holmes,* 14 A.3d 89, 94 (Pa.2011).

The Vehicle Code permits a police officer to initiate a traffic stop when he or she possesses reasonable suspicion that a section of the Code has been or is being violated.

> **§ 6308. Investigation by police officers**
>
> **(b) Authority of police officer.—** Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308. The Commonwealth bears the burden of establishing the validity of the stop. "Thus, under the present version of Section 6308(b), in order to establish reasonable suspicion, an officer must be able to point to *specific and articulable facts* which led him to reasonably suspect a violation of the Motor Vehicle Code...." *Holmes, supra* at 95–96 (emphasis in original).

Instantly, at the suppression hearing, the Commonwealth sought to establish through testimony of the arresting officer that the officer possessed reasonable suspicion to believe Appellant was in violation of 75 Pa.C.S.A. § 4524(c) at the time of the traffic stop. The statute provides as follows.

> **(c) Other obstruction.—**No person shall drive any motor vehicle with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard.

75 Pa.C.S.A. § 4524(c).

This Court has applied the foregoing principles to traffic stops premised on perceived violations of 75 Pa.C.S.A. § 4524(c). In *Commonwealth v. Benton,* 440 Pa.Super. 441, 655 A.2d 1030 (1995), we held a stop to be illegal where the officer did not present reasonable and articulable grounds for suspecting a violation of 75 Pa.C.S.A. § 4524(c). In that case, the officer professed a belief that it was illegal to hang any object from a rearview mirror and provided no testimony that he was aware of the size or nature of the object at the time of the stop or how it materially impaired visibility through the windshield. *Id.* at 1034. *Accord, Commonwealth v. Felty,* 443 Pa.Super. 559, 662 A.2d 1102 (1995).

In support of his argument, Appellant cites our recent decision in *Commonwealth v. Anthony,* 1 A.3d 914 (Pa.Super.2010), and characterizes our holding therein as follows. "Concluding that the officer had seen 'merely a gaggle of the ubiquitous pine-tree shaped air fresheners commonly marketed for use in automobiles,' this Court held that the stop was unlawful because the officer lacked reasonable suspicion to believe the objects materially obstructed the defendant's view." Appellant's Brief at 9, quoting *Id.* at 921.

Appellant misconstrues our holding in *Anthony.* Our conclusion in that case was premised, as in *Benton,* on the officer's lack of an articulable and particularized description of the objects he observed hanging from the rearview mirror, and the impact of those objects on the visibility through the windshield.[4] We did not hold,

---

**4.** Additionally, in *Anthony* we held that the requirements of 75 Pa.C.S.A. § 4524(c) apply

as Appellant suggests, that the items that were ultimately deemed to be hanging from the driver's mirror were inadequate to support an inference of material obstruction as a matter of law. "More to the point, however, the trooper's observations were the product of the stop itself; he did not make detailed observations of the character of the object before making the stop." *Anthony, supra* at 921.

■■■■ Our Supreme Court has still more recently affirmed these principles in *Holmes, supra,* wherein the Court emphasized that the requirement that the police express specific and articulable facts in support of their suspicion is critical to enable the reviewing court to perform an independent assessment of the reasonableness of that suspicion.

The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot.

*Holmes, supra* at 96 (citations omitted). "[I]n order to establish reasonable suspicion, an officer must articulate specific facts *in addition to inferences based on those facts,* to support his belief that criminal activity was afoot." *Id.* at 97 (emphasis in original).

■■■■ Thus, the facts must be testified to in support of the reasonableness of the officer's suspicion occasioned by his or her pre-stop observations.

Under its plain language, a driver is not in violation of the statute simply because he has an object hanging from the rearview mirror; rather, an essential element is that the object or material hanging from the mirror *materially* obstructs, obscures, or impairs the driver's vision. Thus, while we agree with the Commonwealth that the law does not require that police be able to identify the object before making a vehicle stop, in order to support a suppression court's finding that an officer possessed reasonable suspicion to believe that a violation of 75 Pa.C.S.A. § 4524(c) has occurred, the officer must articulate at least *some* fact or facts to support his inference or conclusion that the object materially impaired the driver's view.

*Id.* (emphasis in original).

Were this Court to conclude that an officer's bare testimony that he saw an object hanging from a rearview mirror which obstructed the driver's view, without any additional testimony or other evidence supporting the officer's conclusion that the object materially obstructed the driver's view, was sufficient to demonstrate reasonable suspicion to constitutionally support the intrusion of a vehicle stop, we would obviate the suppression court's role in ensuring there is an objectively reasonable basis for the vehicle stop, and expose every law-abiding motorist who hangs an object from his or her rearview mirror to a potentially unwarranted intrusion.

*Id.* at 99.

Turning to the facts of the instant case, we note that Appellant does not argue that Officer Beyah, in his testimony, failed to

---

to 67 Pa.Code § 175.68 and 75 Pa.C.S. § 4107(b)(2), when addressing items hung from a rearview mirror, so that "the arresting officer's observations must establish not merely the presence of an object hanging from the rearview mirror, but must raise reasonable suspicion that the object materially obscured, obstructed or impaired the driver's vision through the front windshield." *Anthony, supra* at 920.

articulate specific observations about the objects hanging from the mirror or explain his inferences relative to the object's material obstruction to safe visibility. Rather, Appellant only argues that the objects described cannot be deemed capable of materially obstructing a driver's visibility through the windshield. Appellant's Brief at 9. Officer Beyah testified as follows.

**Q.** Officer, can you tell his honor what occurred on that time, date and location?

**A.** On that time, date and location I was working with my partner, officer Cuttino, 6679. We was [sic] in full uniform working—referring to my notes—assigned to 1212 RPC, investigate a white Ford Crown Victoria. Pennsylvania G K Z 0 3 8 7 for vehicle code violation which is 4524 A. [sic] Window—front windshield obstruction.

**Q.** When you say front windshield obstruction, what did you observe?

**A.** Like big dice. Foam dice hanging from the front rear view mirror. Also a bunch of air fresheners, a bunch of stuff hanging from there.

**Q.** Besides the dice how many air fresheners did you say were there?

**A.** I know more than four.

**Q.** How big were the dice?

**A.** Rather large

**THE COURT:** Two by two? Four by four?

**THE WITNESS:** I'm not good with that. Probably about that. [indicating]

**THE COURT:** Three by three.

**BY [Assistant District Attorney]:**

**Q.** And you said that was motor vehicle violation. What was the number?

**A.** 4524 dash A. [sic]

. . .

**Q.** Did you eventually issue a TVR for that motor vehicle violation?

**A.** Yes.

**Q.** How low is the dice hanging from the rear view mirror?

**A.** About three or four inches from the mirror. Enough it can obstruct your view if you had to turn.

. . .

**Q.** Officer, you said it would do what?

**A.** It was low enough to interfere with the driver if he had to turn or if he had to go straight. It was enough to interfere with that.

. . .

**Q.** How big were [the air fresheners]?

**A.** Standard size air freshener you buy at a gas station.

**Q.** Pine tree ones?

**A.** Yes, pine tree ones.

**THE COURT:** They're all the same, all Pine trees?

**THE WITNESS:** I'm not really sure. I can't really say. They were air fresheners.

N.T., 6/18/08, at 7–9.

▮ Based on this record, Judge Palumbo acting as a reviewing court, held as follows. "The combination of multiple air fresheners, three by three inch foam dice, and Officer Beyah's explanation of how these items might impair a driver's view made it reasonable for him to suspect the [A]ppellant was in violation of 75 Pa.C.S. § 4524(a) [sic], and justified the traffic stop." Trial Court Opinion, 6/9/10, at 4. We agree.

Unlike the police officers' testimony in *Benton, Anthony* and *Holmes,* Officer Beyah testified specifically about the size and nature of the objects he observed hanging from the rearview mirror. He also testified about his inferences regarding the impact those items would have on a driver's ability to safely see through the windshield while driving. We conclude that the information was sufficient for the Municipal Court, and later the Court of Common Pleas, to independently evaluate whether Officer Beyah had reasonable suspicion to

believe Appellant was violating 75 Pa. C.S.A. § 4524(c) in that the objects, as observed, appeared to materially obstruct, obscure, or impair Appellant's vision through his windshield.

We conclude that the record supports the Court of Common Pleas' factual findings and legal conclusions in denying Appellant's petition for writ of *certiorari,* and therefore we affirm the order denying relief.

Order affirmed.