**Commonwealth v. Farris**

C.P. of Lawrence County, No. 954 of 2014 CR

*Jonathan R. Miller*, for Commonwealth.
*Nick A. Turco, Jr.*, for defendant.

PICCIONE, *J.*, June 17, 2015—Before the Court for disposition is the Motion to Suppress (hereinafter, the "Motion"), which consists of a Motion to Suppress and Motion for Writ of Habeas Corpus filed on behalf of the Defendant, William Assad Farris (hereinafter, the "Defendant"). The Defendant is charged with possession of drug paraphernalia pursuant to 35 P.S. § 780-113(a)(32) and operating a motor vehicle without a muffler or other effective noise suppressing system pursuant to 75 Pa.C.S.A. § 4523(c). The Defendant argues in his Motion that he was subjected to an illegal search and seizure in violation of his constitutional rights. The Defendant requests this Court to suppress all evidence obtained as fruit of an illegal search and seizure and to preclude the Commonwealth from using the evidence at trial. For

the reasons discussed below, the Defendant's Motion is granted in part and denied in part.

The above-listed charges were filed against the Defendant as a result of events alleged to have occurred on August 3, 2014. On that date, at approximately 1:17 A.M., Officer Randall Cook (hereinafter, "Officer Cook") of the Union Township Police Department was on duty in Union Township near the Get-Go gas station on W. State Street, Union Township, Lawrence County. Officer Linton was also inside Officer Cook's vehicle. Officer Cook observed a white Cadillac sedan making a loud sound and without a properly functioning exhaust system leaving the Get-Go parking lot. Officer Cook believed that the vehicle did not have a muffler system, so he activated his emergency lights to stop the vehicle. Once stopped, Officer Cook also turned the spotlight on the vehicle. Officer Cook saw three passengers in the vehicle who were moving around, dipping, and grabbing things inside the vehicle. In his three-year experience as a Union Township police officer and two and one-half years experience as a City of New Castle police officer, Officer Cook identified the movements in the vehicle to be similar to those of people who were hiding drugs or concerned about drugs or weapons inside the car.

Based upon his observations, Officer Cook called Officer Alfred DeCarbo (hereinafter, "Officer DeCarbo") of the Neshannock Township Police Department because the Union Township Police Department does not have a K-9 unit. Within ten minutes of contacting him, Officer DeCarbo arrived at the scene with his certified trained narcotics detection canine, Avie, whom Officer DeCarbo has had for approximately one year. Prior to Officer

DeCarbo's arrival, Officer Cook approached the vehicle to determine the identity of the driver and occupants and to inform him that he was operating a vehicle without a proper muffler system. Thereafter, the occupants of the vehicle were removed from the vehicle when the canine approached the vehicle. Officer Cook does not recall whether the occupants were patted down. Officers Cook and Linton stood with the occupants while Officer DeCarbo performed the canine sniff. The canine indicated a positive result by pawing at two locations: the driver's side door and the passenger's side door handle.

As a result of the canine search, Officer Cook and Officer Linton conducted a search of the vehicle. They searched the driver and passenger's sides of the vehicle. Inside the driver's side door, Officer Cook located a glass tube with burn marks on it, which Officer Cook identified as a crack pipe. The Officers also located Chore Boy, which is a copper scrubber that Officer Cook indicated as being commonly used to smoke narcotics. The pipe was seized as evidence, and it remains at the Union Township Police Department.

The Defendant also testified regarding the events leading up to his arrest on August 3, 2014. According to the Defendant, he drove the vehicle into the Get-Go parking lot, parked his vehicle, purchased a drink, and returned to his vehicle. While he entered the store, he left his car running. The Defendant concedes that his muffler system was not working correctly, and his car was making a loud noise. As he testified, he believed everyone at the Get-Go parking lot heard the loud sound his vehicle was making. When the Defendant parked his vehicle, the Defendant observed a police vehicle in the parking lot drive around

his vehicle. Upon exiting the parking lot, the Defendant made a right-hand turn onto W. State Street. He observed the police vehicle in the parking lot of Pizza Joe's, an adjacent building to the Get-Go. Just as the Defendant turned, he saw the police vehicle pull behind his vehicle and activate the emergency lights. The Defendant then immediately pulled his car off the road.

Officer Cook approached the vehicle at the driver's side and Officer Linton approached the vehicle's passenger side toward the rear. Officer Cook asked the Defendant for his driver's license and registration and to identify the occupants. The Defendant asked Officer Cook why he was pulled over, and Officer Cook informed him that it was because his vehicle was making a loud noise. Officer Cook asked if the Defendant were nervous, and he responded that he was not, that he just wanted to know why he was being pulled over. Officer Cook and Officer Linton then returned to the police vehicle.

The Officers remained in the police cruiser for approximately four to five minutes prior to Officer DeCarbo's arriving with the canine. Officer Cook returned to the Defendant's vehicle and asked the occupants to exit their vehicle and to stand behind the police cruiser. The Defendant and occupants complied. The Defendant was not patted down or otherwise searched prior to the canine search of the vehicle.

The Defendant filed the instant Motion, wherein he argues that all evidence obtained as a result of the search of the vehicle must be suppressed because those items were the product of an illegal search and seizure in violation of his rights pursuant to the United States

Constitution and the Constitution of the Commonwealth of Pennsylvania. The question this Court must consider is the following: Whether upon stopping a vehicle at night for a violation of the motor vehicle code, a police officer's observation of the occupants' making furtive movements constitutes reasonable suspicion that criminal activity is afoot to enable the officer to conduct a canine search of the exterior of a vehicle? Based upon the totality of the circumstances, these facts are insufficient to establish the requisite reasonable suspicion to conduct a canine search of the exterior of the vehicle.

Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Comm. v. Lindblom*, 854 A.2d 604, 605 (Pa. Super. 2004). At the conclusion of the hearing, the suppression court judge shall enter findings of fact and conclusions of law as to whether the evidence was lawfully obtained. Pennsylvania Rules of Criminal Procedure Rule 581(1). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Comm. v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003). The suppression court judge is entitled to believe all, part, or none of the evidence presented. *Comm. v. Snell*, 811 A.2d 581, 584 (Pa. Super. 2002). "When faced with conflicting testimony, a suppression court, as factfinder, may pass upon credibility, and these findings will not be disturbed when supported by the record." *Comm. v. Fahy*, 516 A.2d 689, 696 (Pa. 1986).

All Pennsylvania citizens are afforded protections against unreasonable searches and seizures under both

Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution. Pennsylvania recognizes the three levels of interaction between police officers and citizens that have been delineated by the Supreme Court for evaluating alleged violations of citizens' rights against unlawful searches and seizures. *Comm. v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995). These three levels differ with regard to the requisite level of suspicion an officer must have and a citizen's compulsion to respond to an officer's requests. *Id.* The least intrusive interaction is a mere encounter, which involves a request for basic information. *Id.* An officer does not need to have any particular level of suspicion to initiate a mere encounter, and there is no official compulsion on the part of a citizen to stop or respond to an officer's request in a mere encounter setting. *Id.* The citizen is free to stop speaking and leave at any point.

The second level of interaction is an investigative detention, which is more invasive than a mere encounter. *Id.* A citizen detained for investigative purposes is compelled to stop for a brief period of detention that does not involve coercion such as that which would reach the level of an arrest. *Id.* Consequently, to initiate an investigative detention, an officer must have reasonable suspicion. *Id.* at 1048. To establish reasonable suspicion, "an officer must articulate specific facts in addition to inferences based on those facts to support his belief that criminal activity is afoot." *Comm. v. Shabazz*, 18 A.3d 1217, 1221 (Pa. Super. 2011). The essence of a court's inquiry should be whether the facts available to the officer at the time of the intrusion upon the citizen's rights, when considered in the totality, would warrant a man of reasonable caution to believe that

the officer's actions were appropriate. *Comm. v. Blair*, 860 A.2d 567, 573 (Pa. Super. 2004).

The third and final level of citizen-police interaction is the custodial detention. *Id.* This is the functional equivalent of an arrest and must be supported by probable cause, which is a greater degree of suspicion than the reasonable suspicion required for an investigative detention. *Id.* at 1048, fn. 3. "Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime." *Comm. v. Williams*, 2 A.3d 611 (Pa. Super. 2010) (citations omitted). "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Comm. v. Cook*, 865 A.2d 869, 875 (Pa. Super. 2004). "In determining whether probable cause exists, [courts] apply a totality of the circumstances test." *Williams*, 2 A.3d at 611.

In the case *sub judice*, the Defendant encountered the police vis-a-vis a traffic stop based upon a Motor Vehicle Code violation. "A police officer may stop a vehicle whenever he or she has articulable and reasonable grounds to suspect that a provision of the Motor Vehicle Code has been violated." *Comm. v. Palmer*, 751 A.2d 223, 226 (Pa. Super. 2000). Officer Cook testified that he heard the loud noise emanating from the Defendant's vehicle, and the Defendant also testified that he did not have a proper muffler system in place between it had been stolen.

Based upon the noise alone, the Officers had sufficiently reasonable grounds to suspect that the Defendant was operating a vehicle without a proper muffler system, in violation of the motor vehicle code. Therefore, the initial stop of the Defendant's vehicle was clearly permissible as it was supported by reasonable suspicion.

Although the reasoning for conducting a traffic stop was valid, the Officers subsequently held the Defendant specifically for investigative purposes based upon no additional information that he had when he first approached the vehicle. Officer Cook instructed the Defendant and the other occupants of the vehicle to exit the vehicle to enable Officer DeCarbo to facilitate a canine search of the exterior of the vehicle. A police officer may stop a vehicle, check the driver's license and registration, and issue a citation if there is reasonable belief that a provision of the Motor Vehicle Code is being violated. *Comm. v. DeWitt*, 608 A.2d 1030, 1032 (Pa. 1992); *Comm. v. Talley*, 634 A.2d 640, 643 (Pa. Super. 1993). After doing so, however, the driver must be allowed to proceed unless the police officer has reasonable grounds to suspect an illegal transaction in drugs or some other serious crime. *Comm. v. Lopez*, 609 A.2d 177, 182 (Pa. Super. 1992).

The Commonwealth relies upon Officer Cook's observation of the movements of the occupants prior to approaching the vehicle to support a finding of reasonable suspicion of criminal activity. Specifically, Officer Cook testified that upon stopping the Defendant's vehicle and turning on the spot light, he observed the occupants "dipping and grabbing at things." He believed that the occupants were trying to hide drugs or guns.

The Superior Court of Pennsylvania in *Comm. v. Buchert*, 68 A.3d 911 (Pa. Super. 2013), considered a similar issue as the one in the instant case. In Buchert, two officers were on duty in Philadelphia around 12:15 A.M. when they spotted a vehicle traveling with a broken tail light. *Id.* at 912. The officers noted that they were in a high narcotics area. The officers pulled the vehicle over, and when they exited the police cruiser, with the use of a flashlight, they could see the defendant, who was in the front passenger seat, bend forward and appear to reach under the seat. *Id.* The officers instructed the occupants to keep their hands visible, which they did. *Id.* The officers recalled that the defendant appeared to be nervous and could see his heavy breathing and rapid heartbeat. *Id.* At that point, an officer instructed the defendant to exit the vehicle, and the officer performed a frisk on the defendant, which revealed no contraband, *Id.* The officers then searched the inside of the vehicle, in the defendant's immediate area of control, in which the officers located a .22 caliber revolver, *Id.* The defendant filed a motion to suppress evidence, wherein he argued that the evidence was obtained as the result of an unlawful search devoid of probable cause. *Id.* The trial court granted the motion, and the Commonwealth appealed. *Id.*

On appeal, the Commonwealth argued that the trial court erred in granting the motion to suppress because the officers had sufficient cause to conduct a protective search of the area within the defendant's immediate control when the defendant bent forward and reached under the seat and appeared nervous. *Id.* at 913. The Superior Court agreed, *Id.* Although rejecting the officers' contention that the stop occurred in a high crime area, the Court reasoned

that because the stop occurred at night, and the officers observed the defendant reach under his seat before exhibiting extreme nervousness, under the totality of the circumstances, the officers had reasonable suspicion to conduct a *Terry* protective weapons search. *Id.* at 916. The Court reversed the trial court and remanded the case.

Similarly, the Superior Court has considered other cases, but none exactly on point. Although the major inquiry surrounded whether a defendant gave consent to search a vehicle, in *Comm. v. Mover*, the Court found that furtive movements and nervousness, alone, did not support a finding of the existence of reasonable suspicion. 954 A.2d 659, 670 (Pa. Super. 2008). The Court cited *Comm. v. Reppert*, in support of this claim. *Id.* In *Reppert*, the determination of reasonable suspicion for an initial traffic stop was not the central issue of the case; notwithstanding this, the Court found that furtive movements and nervousness establishes only a hunch, insufficient to hold a defendant for further investigation or a *Terry* stop. 814 A.2d 1196, 1206 (Pa. Super. 2002). Also, in *Comm. v. Cartagena*, the Superior Court found that a protective search of a vehicle was illegal when the facts only established that the stop occurred at night, the windows were tinted, and the defendant appeared to be nervous. 63 A.3d 294, 304 (Pa. Super. 2013). The Court found that although merely a Motor Vehicle Code violation, tinted windows had to be considered in the totality analysis because they pose a risk to the officers upon approaching a vehicle. *Id.* at 305.

In considering the totality of the circumstances, the Court finds that the Officers did not possess sufficient articulable facts to support a finding that reasonable suspicion that

criminal activity was afoot. The record establishes that the stop occurred at night and the Officers observed furtive movements. The Court will not consider the lack of a muffler because this poses no danger to the Officers. Although Officer Cook testified that based upon the furtive movements, he ordered the occupants of the vehicle to exit because he was concerned in part for officer safety. Notable, however, Officer Cook did not recall whether he conducted a *Terry* frisk or asked the occupants if they had any weapons on them, and the Defendant testified that none of the occupants were, in fact, patted down. The Officers did not feel the need to conduct a protective search of the immediately accessible areas to the occupants to ensure no weapons were present. Instead, Officer Cook just called Officer DeCarbo to facilitate a search for narcotics. If the Officers had a supported reason to be concerned for their safety, or if the Defendant had displayed extreme nervousness, perhaps this would be enough to find reasonable suspicion. Based upon the credible facts in the instant case, considered in the totality, the Court cannot find that the Officers possessed sufficient articulable facts to support a finding of reasonable suspicion. The Commonwealth failed to meet its burden to establish that the evidence obtained by the Officers is admissible at trial. Therefore, the canine search of the exterior vehicle as well as the Officers' search of the interior of the vehicle were conducted illegally in violation of the Defendant's constitutional rights. As a result, all evidence obtained as a result of the searches must be suppressed. Based upon the foregoing, the Motion to Suppress Evidence is hereby GRANTED.

Also within the Motion to Suppress is the Defendant's Motion for Writ of Habeas Corpus. As stated above, the

Defendant is charged with possession of drug paraphernalia pursuant to 35 P.S. § 780-113(a)(32) and operating a motor vehicle without a muffler or other effective noise suppressing system pursuant to 75 Pa.C.S.A. § 4523(c). In the Motion for Writ of Habeas Corpus, the Defendant argues that the Commonwealth has failed to present a prima facie case of the charges against him. As a result, the Defendant requests this Court dismiss all charges against him.

Filing a petition for writ of habeas corpus is the recognized method for challenging a finding that the Commonwealth has established a prima facie case at the preliminary hearing stage. *Comm. v. Karlson*, 674 A.2d 249 (Pa. Super. 1996). *See also Comm. v. McBride*, 595 A.2d 589 (Pa. 1995); *Comm. v. Carmody*, 799 A.2d 143 (Pa. Super. 2002). On review, the trial court must find that the Commonwealth presented sufficient evidence to make a prima facie showing that the defendant committed the crime with which he or she is charged. *Comm. v. Hock*, 728 A.2d 943 (Pa. 1999).

In order to establish a prima facie showing, the Commonwealth must present evidence establishing that the crime charged was committed and that there is a probability that the defendant committed the charged crime. *Comm. v. Fox*, 619 A.2d 327 (Pa. Super. 1993). To prove these two things, the Commonwealth must offer some proof to establish each material element of the offense charged. *Comm. v. Owen*, 580 A.2d 412 (Pa. Super. 1990). It is not necessary that the Commonwealth prove each element beyond a reasonable doubt. *Comm. v. Prosdocimo*, 479 A.2d 1073 (Pa. Super. 1994). The Commonwealth need only meet the evidentiary standard

of showing "sufficient probable cause" that the defendant committed the offense. *Id.* A prima facie case is established when the Commonwealth submits evidence that, if true, would warrant the trial judge to permit the case to go to a jury. *Commonwealth v. Marti*, 779 A.2d 1177 (Pa. Super. 2001). Weight or credibility of the evidence presented is not at issue at a preliminary hearing. *Id.* The Commonwealth needs only present evidence concerning each element of the crime charged, and the Commonwealth is entitled to all reasonable inferences that can be drawn from the evidence presented. *Id.* The Commonwealth may prove its case entirely by circumstantial evidence; however, the evidence must not be pure conjecture. *Comm. v. Stores*, 463 A.2d 1108, 1112 (Pa. Super. 1983).

First, the Defendant is charged with possession of drug paraphernalia pursuant to 35 P.S. § 780-113(a)(32). A person has violated § 780-113(a)(32) of The Controlled Substance, Drug, Device and Cosmetic Act (hereinafter, the "Act") if he possesses with the intent to use drug paraphernalia. *Comm. v. Pitner*, 928 A.2d 1104, 1108 (Pa. Super. 2007). The Act defines "drug paraphernalia" in pertinent part as follows: "all equipment, products and materials of any kind which are used, intended for use or designed for use in ... packaging, repackaging, storing, containing, [or] concealing ... a controlled substance in violation of this act." 35 P.S. § 780-102. "[T]he Commonwealth must establish that the items possessed[] were used or intended to be used with a controlled substance. This burden may be met by the Commonwealth through circumstantial evidence alone." *Comm. v. Torres*, 617 A.2d 812, 815 (Pa. Super. 1992). Because the Court herein grants the Defendant's Motion to Suppress, the

Commonwealth has no evidence to present to establish this claim. As a result, the Commonwealth failed to meet its burden to present a prima facie case for this charge, and the Motion for Writ of Habeas Corpus is hereby GRANTED with respect to the charge of possession of drug paraphernalia.

The Defendant is also charged with operating a motor vehicle without a muffler or other effective noise suppressing system pursuant to 75 Pa.C.S.A. § 4523(c). This section provides, "Every motor vehicle shall be equipped with a muffler or other effective noise suppressing system in good working order and in constant operation and no muffler or exhaust system shall be equipped with a cutout, bypass or similar device." 75 Pa.C.S.A. § 45236(c). Under this section, "a violation occurs if the vehicle's muffler system is not in good working order." *Comm. v. Bailey*, 947 A.2d 808, 813 (Pa. Super. 2008). In *Bailey*, the Court found that "if an officer hears an unusually loud exhaust, the officer may reasonably infer that there is a problem with the muffler and initiate a stop based upon a reasonable suspicion that the muffler is not 'in good working order.'" *Id.* at 814-815. Here, Officer Cook testified that the Defendant's vehicle was making a loud noise, leading him to believe that the muffler was not in proper working order. The Officer may stop a vehicle based upon the noise alone, rather than the need to observe a defective muffler. *Id.* at 815. After Officer Cook initiated a traffic stop based upon a faulty muffler, the Defendant informed him that the vehicle currently did not have a muffler in place. The Defendant also acknowledged that the vehicle was indeed emitting a loud noise. This evidence is sufficient to establish a prima facie case of the charge of operating

a motor vehicle without a muffler or other effect noise suppressing system pursuant to 75 Pa.C.S.A. § 4523(c). As a result, the Motion for Writ of Habeas Corpus with respect to this charge is hereby DENIED.

Based upon the foregoing, the Defendant's Motion to Suppress is hereby GRANTED IN PART and DENIED IN PART.

## ORDER OF COURT

AND NOW, this 17th day of June, 2015, the case being before the Court on March 9, 2015, for a hearing on the Motion to Suppress and Motion for Writ of Habeas Corpus filed on behalf of the Defendant, with Assistant District Attorney Jonathan R. Miller, Esquire, appearing and representing the Commonwealth of Pennsylvania, and Nick A. Turco, Jr., Esquire, appearing and representing the Defendant, and after consideration of the applicable record, the Court hereby ORDERS AND DECREES as follows:

1. The Defendant's Motion to Suppress is hereby GRANTED IN PART AND DENIED IN PART pursuant to the attached Opinion.

2. The Defendant's Motion to Suppress is hereby GRANTED pursuant to the attached Opinion.

3. The Defendant's Motion for Writ of Habeas Corpus is hereby GRANTED with respect to Count 1 as contained within the Information.

4. Count 1 in the Information, possession of drug paraphernalia pursuant to 35 P.S. § 780-113(a)(32), is hereby STRICKEN.

342

5. The Defendant's Motion for Writ of Habeas Corpus is hereby DENIED with respect to Count 2 as contained within the Information.

6. The Clerk of Courts shall properly serve notice of this Order and attached Opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the Court's file.