J-S63042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARREN WILLIAM MARINO | : | No. 730 WDA 2018 |

Appeal from the Order Entered May 4, 2018
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001792-2017

BEFORE:   OTT, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 18, 2018**

The Commonwealth appeals from the order entered May 4, 2018, in the Mercer County Court of Common Pleas, granting a pretrial motion to suppress evidence filed by Appellee, Darren William Marino.[1]  On appeal, the Commonwealth contends the trial court erred in concluding Marino's traffic stop for a violation of the Motor Vehicle Code was not supported by reasonable suspicion.  For the reasons below, we affirm.

The trial court issued the following findings of fact after Marino's suppression hearing:

---

* Former Justice specially assigned to the Superior Court.

[1] Pursuant to Pa.R.Crim.P. 311(d), the Commonwealth properly certified in its notice of appeal that "the pre-trial Order from which this appeal is taken terminates or substantially handicaps its prosecution."  Notice of Appeal, 5/16/2018.

1.  Trooper Snyder is a Pennsylvania State Police trooper and has been for four years.  He is stationed at the Mercer barracks.

2.  On September 5, 2017, Trooper Snyder was on duty at approximately 4:00 p.m. in the Borough of Grove City, Pennsylvania.

3.  At that time, Trooper Snyder observed a vehicle with an object hanging from the rear view mirror that was purple in color.

4.  The object was estimated to be a baseball-sized object.  The object was swinging back and forth from the rear view mirror and was approximately two to three inches.

5.  On first observation, Trooper Snyder was approximately a car length or less from [Marino's] car.

6.  In the opinion of the trooper, the object obstructed the view through the windshield.

7.  At the time of day, it was light out and nothing was blocking the view of [Marino's] vehicle.

8.  Trooper Snyder then activated his lights and conducted the traffic stop.

9.  Trooper Snyder was initially going to issue a warning for the obstruction; however, after running the information, which determined that the driver's license and registration were valid, he returned to the vehicle and detected an odor of marijuana.

10.  Trooper Snyder is familiar with the odor of marijuana.

* * * *

12.  Trooper Snyder then asked [Marino] whether there was any marijuana in the car.  [Marino] answered, "No."  Trooper Snyder then asked when the last time [Marino] had smoked marijuana, and [Marino] answered, "Approximately one hour ago."  At that point in time, the trooper asked [Marino] to exit the vehicle to perform field sobriety tests.

13.  A video of the field sobriety test was watched as part of the suppression hearing.  … [Marino] failed all tests.  At that point in time, the trooper arrested [Marino] and advised him that he was going to take him for a blood test.

14. The trooper then conducted a search of the vehicle and found marijuana in a baggie in the glove box. The trooper also found a pipe used for smoking marijuana.

15. On cross[-]examination, the trooper indicated that the object, again, was approximately baseball size. He further indicated that the video camera of the MVR was above eye level because he was driving in an SUV on that date. ...

Findings of Fact, 4/2/2018, at ¶¶ 1-15.

Marino was subsequently charged with driving under the influence of controlled substances (three counts), possession of a small amount of marijuana, possession of drug paraphernalia, and windshield obstructions.[2] On March 1, 2018, he filed a pre-trial motion seeking suppression of the evidence recovered following an unlawful stop, because, in his view, Trooper Snyder had no reasonable suspicion to stop the vehicle for a violation of the Motor Vehicle Code. *See* Omnibus Pre-Trial Motion, 3/1/2018, at 1-2. The trial court conducted a suppression hearing on April 4, 2018. Both the mobile video recording of the vehicle stop, and the actual object hanging from [Marino's] rear view mirror were introduced into evidence.[3] *See* N.T., 4/4/2018, at 12-13, 22. At the conclusion of the hearing, the trial court issued its findings of fact. Thereafter, on May 4, 2018, the court entered an order granting Marino's suppression motion. The Commonwealth filed a timely

---

[2] *See* 75 Pa.C.S. §§ 3802(d)(1)(i), (d)(1)(iii), and (d)(2); 35 P.S. §§ 780-113(a)(31) and (a)(32); and 75 Pa.C.S. § 4524(c), respectively.

[3] However, neither the video recording nor the purple object were submitted to this Court as part of the certified record.

motion for reconsideration, which the court promptly denied. This appeal followed.[4]

The Commonwealth lists two issues on appeal, which we will address together. It contends the trial court erred in granting Marino's suppression motion because Trooper Snyder's testimony was sufficient to articulate reasonable suspicion for the vehicle stop. Furthermore, the Commonwealth maintains that, in rejecting the trooper's testimony, the trial court improperly gave more weight to the degree of obstruction of the ball hanging from the mirror than the trooper's own observations. *See* Commonwealth's Brief at 4.

Our standard of review is well-settled:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Miller*, 2012 PA Super 251, 56 A.3d 1276, 1278–79 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

---

[4] On May 18, 2018, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied with the court's directive, and filed a timely concise statement on May 31, 2018.

> ***Commonwealth v. Korn***, 139 A.3d 249, 252–253 (Pa. Super.
> 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016). "It is
> within the suppression court's sole province as factfinder to pass
> on the credibility of witnesses and the weight to be given to their
> testimony. The suppression court is free to believe all, some or
> none of the evidence presented at the suppression hearing."
> ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super.
> 2003) (citations omitted), *appeal denied*, 577 Pa. 701, 847 A.2d
> 58 (2004). Nevertheless, the suppression court's conclusions of
> law are not binding on an appellate court, and are subject to
> plenary review. ***Commonwealth v. Johnson***, 969 A.2d 565, 567
> (Pa. Super. 2009) (citations omitted).

***Commonwealth v. Byrd***, 185 A.3d 1015, 1019 (Pa. Super. 2018). When a defendant files a motion to suppress evidence, "it is the Commonwealth's burden to present evidence that the defendant's constitutional rights were not infringed." ***Commonwealth v. Enimpah***, 106 A.3d 695, 701 (Pa. 2014).

A police officer's statutory authority to stop a motor vehicle is codified in Section 6308(b) of the Motor Vehicle Code, which provides:

> Whenever a police officer … has reasonable suspicion that a
> violation of this title is occurring or has occurred, he may stop a
> vehicle, upon request or signal, for the purpose of checking the
> vehicle's registration, proof of financial responsibility, vehicle
> identification number or engine number or the driver's license, or
> to secure such other information as the officer may reasonably
> believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

In interpreting this subsection, the courts of this Commonwealth have concluded that a vehicle stop based solely on reasonable suspicion of a motor vehicle violation "must serve a stated investigatory purpose. In effect, the language of Section 6308(b)—'to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title'—

is conceptually equivalent with the underlying purpose of a **Terry** stop." **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (internal citations omitted), *appeal denied*, 611 Pa. 650, 25 A.3d 327 (2011). When no further investigation is necessary to determinate if a driver committed a traffic violation or crime, the officer must possess "probable cause to believe that the vehicle or the driver was in violation of some provision of the Code." **Id.** (quotation and emphasis omitted).

In the present case, Trooper Snyder stopped Marino for a violation of Section 4524 of the Motor Vehicle Code, which provides, in pertinent part:

> (c) Other obstruction.--No person shall drive any motor vehicle with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard.

75 Pa.C.S. § 4524(c). The courts of this Commonwealth have held that a stop based upon a suspected violation of Section 4524(c) requires only reasonable suspicion. **See Commonwealth v. Holmes**, 14 A.3d 89 (Pa. 2011); **Commonwealth v. Shabazz**, 18 A.3d 1217 (Pa. Super. 2011).

In **Holmes**, **supra**, the Pennsylvania Supreme Court explained:

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in

light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

Thus, under the present version of Section 6308(b), in order to establish reasonable suspicion, an officer must be able to point to specific and articulable facts which led him to reasonably suspect a violation of the Motor Vehicle Code, in this case, Section 4524(c).

**Holmes**, **supra**, 14 A.3d at 95-95 (internal citations omitted). Furthermore, "[i]t is the duty of the suppression court to **independently evaluate** whether, under the particular facts of a case, an objectively reasonable police officer would have **reasonably suspected** criminal activity was afoot." **Id.** at 96 (emphasis supplied). The **Holmes** Court emphasized the need for "specific facts justifying" the officer's decision to conduct a vehicle stop: "To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever." **Id.** (citation omitted).

In **Holmes**, the Supreme Court found the testimony provided at the suppression hearing was insufficient to support the trial court's determination that the officer had reasonable suspicion to stop the defendant's vehicle. **See id.** at 97-98. In that case, the officer testified simply that he observed, "objects hanging from the rearview mirror [of the defendant's vehicle] which were obstructing the driver's view." **Id.** at 97 (citation omitted). The Court emphasized there was no description of the size of the objects or "how the objects impaired" the driver's field of vision. **Id.** at 98. Based on the officer's "bare testimony," the **Holmes** Court concluded the suppression court would

not have been able to determine if the officer had an "objectively reasonable basis for the vehicle stop." *Id.* at 99.

A panel of this Court came to a different conclusion in *Commonwealth v. Shabazz*, 18 A.3d 1217 (Pa. Super. 2011). Like *Holmes*, in *Shabazz*, a police officer initiated a traffic stop based on a suspected violation of Section 4524. *Id.* at 1218. During the suppression hearing, the officer described the objects hanging from the defendant's rearview mirror as "[r]ather large" dice and at least four pine tree air fresheners. *Id.* at 1222 (citation omitted). He estimated the dice were three inches by three inches, and hung "three or four" inches below the mirror, "low enough to interfere with the driver if he had to turn or if he had to go straight." *Id.* (citation omitted). Based on this testimony, the trial court found, and the panel agreed, "[t]he combination of multiple air fresheners, three by three inch foam dice, and [the officer's] explanation of how these items might impair a driver's view made it reasonable for him to suspect the [defendant] was in violation of [Section 4524(c)], and justified the traffic stop." *Id.* (citation omitted).

Turning to the present matter, the trial court distinguished the facts presented in *Shabazz*, *supra*, and determined Trooper Snyder's stop of Marino's vehicle was unlawful:

> [Trooper] Snyder initiated the traffic stop in broad daylight and was able to clearly see the object hanging from [Marino's] rearview mirror. … [Trooper] Snyder was able to accurately describe the object and state that he believed the object created an obstruction to [Marino's] view. However, the purple object hanging from [Marino's] rearview mirror presents far less of an obstruction than was present in *Shabazz*. More importantly, it

hung by itself. In **Shabazz**, the obstruction was created by a pair of fuzzy dice, each similar in size to [Marino's] single purple sphere, and several additional air fresheners.

Having seen the object and the video from [Trooper] Snyder's police vehicle, this Court finds that [Trooper] Snyder did not have reasonable suspicion to believe that the object created a material obstruction of [Marino's] view. The object hung by itself, and it was too small to materially impair [Marino's] ability to drive the vehicle safely. Accordingly, the traffic stop initiated by [Trooper] Snyder was unlawful, and any evidence obtained following the stop must be suppressed.

Trial Court Opinion, 5/4/2018, at 4-5 (footnote omitted).

The Commonwealth maintains Trooper Snyder's testimony alone provided the requisite reasonable suspicion for his stop of Marino's vehicle, **See** Commonwealth's Brief at 17-19. It insists the trooper's detailed description of the hanging object, his testimony that it "swung back and forth," and his belief that the object "materially obstructed the driver's view through the front windshield," was sufficient to demonstrate reasonable suspicion for the stop. Commonwealth's Brief at 19. However, the trial court did not find Trooper Snyder's belief - that the object "materially obstruct[ed]" Marino's vision - was **reasonable**. 75 Pa.C.S. § 4524(c). Here, the court had the opportunity to see the actual size and shape of the purple object, and, more importantly, view the mobile video recording of the stop. **See** N.T.,4/4/2018, at 13, 22; Trial Court Opinion, 5/4/2018, at 5. In a subsequent opinion accompanying its order denying the Commonwealth's motion for reconsideration, the court elaborated:

[T]his Court was able to make its own determination as to the reasonableness of [Trooper] Snyder's belief. In making that determination, the degree of the obstruction caused by the object

was relevant to this Court's determination. Due to the size of the object, [Trooper] Snyder could have observed, at most, a minor obstruction. Therefore, [Trooper] Snyder's subjective belief that the object created a material obstruction was unreasonable.

Trial Court Opinion, 5/14/2018, at 3.

Pursuant to **Holmes**, the trial court was required "to independently evaluate whether, under the particular facts of [the] case, an objectively reasonable police officer would have reasonably suspected" Marino was committing a traffic violation. **Holmes**, **supra**, 14 A.3d at 96. Otherwise, as the **Holmes** Court points out, police officers would be given "absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever." **Id.** (citation omitted). Furthermore, the **Holmes** Court emphasized Section 4524(c) does not prohibit a driver from hanging an object from his rearview mirror; "rather, an essential element is that the object or material hanging from the mirror materially obstructs, obscures, or impairs the driver's vision." **Id.** at 97. In this case, the trial court concluded no reasonable person could conclude that Marino's view was materially obstructed under the circumstances present.

The Commonwealth also insists, however, the trial court's independent consideration of the "degree of obstruction" was improper at this stage in the proceedings. Commonwealth's Brief at 21. It maintains the degree to which the object obstructed Marino's view was relevant only in determining whether Marino was guilty beyond a reasonable doubt of a violation of Section 4524(c), that is, a sufficiency challenge. **See id.** The Commonwealth argues such a consideration is not relevant in determining whether a police officer lawfully

effectuated a traffic stop, when all that is required is reasonable suspicion of a potential violation. *See id.* Relying on Justice Eakin's Dissenting Opinion in *Holmes*, *supra*, the Commonwealth contends, "[i]t is not the degree of obstruction that provides reasonable suspicion, … but Trooper Snyder's own observations regarding a possible material obstruction." *Id.* at 24. *See Holmes*, *supra*, 14 A.3d at 100 (Eakin, J. Dissenting) ("The issue is whether what the officer saw gave him reason to suspect there was such a violation. What the officer finds after the stop does not matter—it is whether he reasonably believes a criminal violation may be afoot that counts.").

In responding to Judge Eakins' Dissent, the *Holmes* Majority stated:

> The dissent, it seems, would write the materiality element out of Section 4524(c) for purposes of a vehicle stop. Although the dissent recognizes that the critical issue in evaluating the legality of a traffic stop is whether the police officer reasonably believes a criminal violation may be afoot, the dissent opines that an officer need not observe a material obstruction; rather, he may observe any obstruction and *then* "investigate whether vision is blocked to the point of comprising a violation." Such an approach is contrary to the principles underlying *Terry*. Further, it would give police officers *carte blanche* to stop any vehicle with an object hanging from the rearview mirror, as any hanging object would arguably obstruct the driver's view to some degree. Yet, as discussed supra, Section 4524(c) does not prohibit a driver from hanging any object from the vehicle's rearview mirror; it prohibits only *material* obstructions. Thus, unless [the police officer] reasonably believed that the object hanging from [the defendant's] rearview mirror *materially* obstructed his view—which [the officer] did not claim at the suppression hearing—he had no legal basis upon which to stop [the defendant's] vehicle.

*Holmes*, *supra*, 14 A.3d at 98 n.14 (citation omitted and emphasis in original). Although, in the present case, Trooper Snyder did testify that he

- 11 -

believed the purple object hanging from Marino's rearview mirror "materially obstructed the driver's … view[,]" the trial court was not compelled to accept the trooper's testimony. Rather, the court considered the testimony in light of the other evidence - particularly the object itself and the mobile video recording – and concluded Trooper Snyder's characterization of the obstruction as material was unreasonable. The role of the suppression court is to ensure "there is an objectively reasonable basis for the vehicle stop[.]" *Holmes*, *supra*, 14 A.2d at 99. Here, the trial court found there was no reasonable basis for the stop, and we find no reason to disagree. Accordingly, the Commonwealth is not entitled to relief.

Order affirmed.

Judge Murray joins this memorandum.

President Judge Emeritus Stevens files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2018

- 12 -