**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Harry A. ANTHONY, Sr., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 2009.

Filed July 19, 2010.

Charles A. Pascal, Jr., Public Defender, Kittaning, for appellant.

Cindy L. Calarie, Assistant District Attorney, Kittaning, for Commonwealth, appellee.

BEFORE: MUSMANNO, BENDER and BOWES, JJ.

OPINION BY BENDER, J.:

¶ 1 Harry A. Anthony, Sr., appeals the judgment of sentence entered following his conviction of Driving Under Influence of Alcohol or Controlled Substance and Violation of Vehicle Equipment Standards, 75 Pa.C.S. §§ 3802(d)(1)(i), (iii), (d)(2), 4107(b)(2) (respectively). Anthony contends that the trial court erred in denying his motion to suppress evidence of his use of a controlled substance on the basis that the arresting officer lacked reasonable suspicion to conduct a stop. Anthony also contends that the evidence was not sufficient to sustain his conviction under section 3802(d)(2) which prohibits driving while under the influence of a controlled substance to a degree that impairs an individual's ability to drive safely. For the reasons that follow, we conclude that the initial stop was unlawful, requiring exclusion of all evidence seized pursuant thereto. Accordingly, we reverse the judgment of sentence.

¶ 2 In its opinion following the hearing on Anthony's omnibus pre-trial motion, the trial court characterized the facts surrounding Anthony's arrest as follows:

On the evening of November 28, 2006, [Pennsylvania State Trooper Jeremy Bowser] was sitting in his patrol car at the intersection of State Routes 28/66 and 85 when he observed a Ford Escort driven by Defendant approach the intersection. Noting that the vehicle had objects [1] hanging from the rear view mirror in violation of 75 Pa.C.S. § 4107(b)(2), Bowser pulled out from a parked position and followed Defendant. He initiated a traffic stop ... at approximately 8:10 P.M. for that violation. He did not observe any other traffic violations by Defendant or any indications that Defendant was driving unsafely.

When Defendant pulled over, Bowser approached the passenger side of his vehicle and spoke to the occupants of the car through the rolled-down window. The first thing he noticed was the smell of alcohol coming out of the car. He also noticed that there was an open case of beer in the back with at least one beer removed. Both Defendant and the passenger had glassy eyes. When asked for his driver's license, Defendant informed Bowser that his license was suspended. The officer confirmed Defendant's license suspension, which was DUI–related. Bowser also discovered that Defendant's passenger had an outstanding warrant on a felony charge. Upon learning this, Bowser called for a backup state trooper.

After the backup officer arrived, the passenger was instructed to exit the vehicle at 8:28 P.M. The backup officer

1. The objects in question consisted of three air fresheners. N.T., Non–Jury Trial, 7/25/08, at 14.

searched the passenger and took him into custody. At 8:30 P.M., Defendant was instructed to exit the vehicle and was patted down. At 8:32 P.M., Bowser arrested Defendant for driving while suspended DUI–related. He was given Miranda warnings in front of his vehicle at 8:35 P.M. and signed a written waiver at 8:38 P.M. Bowser had observed two open containers of beer in the car when Defendant climbed out. Bowser asked Defendant if he had been drinking. Defendant replied that he had been drinking a beer while driving, and another one earlier in the evening. Bowser could smell a strong odor of alcohol on Defendant's breath as he talked with him. He asked if Defendant had taken any drugs. Defendant denied it. However, Defendant subsequently indicated that he had taken a 500 milligram Vicodin pill for pain, and that the pill was not prescribed. Bowser then transported Defendant to the state police barracks for further evaluation.

At approximately 9:08 P.M., Bowser gave Defendant a portable breath test for alcohol at the station, indicating to Defendant that because he had been driving under suspension DUI–related, he could be charged with Driving Under Suspension—DUI related pursuant to § 1543(b)(1.1)(i) of the Motor Vehicle Code [*see* 75 Pa.C.S. § 1543(b)(1.1)(i) ] if the result was .02% or greater. The result of the PBT was .000%. Bowser gave Defendant a second Miranda warning at 9:10 P.M., and again questioned Defendant about his intake of illegal drugs. Bowser told Defendant the fact that his eyes were "so glazed over" was not consistent with just drinking one beer and taking one Vicodin pill. Defendant then admitted to Bowser that he had smoked marijuana at approximately 4:00 P.M. Because of these admissions and Bowser's personal observations of

Defendant, Bowser contacted Trooper Ronald Vetovich, Jr., the state police's certified drug recognition expert, and asked him to perform a drug recognition evaluation (DRE) of Defendant for consumption of drugs other than alcohol.

At the hearing, Vetovich testified that he had been a Pennsylvania State Trooper for over seventeen years. Vetovich received a total of nine days of training in a specific twelve-step evaluation process used to assess persons suspected of being under the influence of drugs. He then had fourteen days of field work in the presence of instructors in which he actually evaluated individuals suspected of being under the influence of drugs. Having successfully completed this course, Vetovich was certified as a drug recognition expert. He has also been certified to train others to become drug recognition experts.

Vetovich began his DRE of Defendant at 10:05 P.M. At the conclusion of the evaluation process, Vetovich concluded that Defendant was under the influence of drugs to the extent that he was unable to safely operate a vehicle. Specifically, Vetovich noted that Defendant's coordination was exaggerated, his eyes were glassy, red and bloodshot, and his eyelids were droopy. Vetovich testified that in the walk and turn test, Defendant performed the turn improperly and stopped walking on step one of the return walk. In the Romberg balance test, Defendant was swaying approximately two inches from the front to rear and from left to right.

In the one-leg stand test, Defendant swayed while balancing and had to be told to look at this foot while counting. In his concurrent counting of time, Defendant was also somewhat impaired. In the finger-to-nose test, Defendant twice failed to touch the tip of his nose.

Vetovich testified that for the reasons given in page four of his report, it was his opinion that Defendant was intoxicated and impaired at the time Vetovich examined him and that Defendant was unsafe to operate a motor vehicle at the time he was stopped by Trooper Bowser. *See* Commonwealth Ex. 2.

Based upon his own observations, Vetovich's conclusions, and Defendant's admissions regarding drug use, Bowser placed Defendant under arrest for DUI at 10:40 P.M. Defendant consented to have his blood drawn and was taken to the hospital. His blood was drawn at 11:07 P.M. The state police subsequently received a toxicology report on Defendant's blood. The report indicated that the blood tested positive for benzoylecgonine, a metabolite of cocaine, which is a DEA Schedule II controlled drug. *See* Commonwealth Ex. 1. The amount of benzoylecgonine found was 280 nanograms per milliliter. *Id.* Defendant's blood also tested positive for "cocaine cross-reactives." *Id.* The blood test did not show the presence of cannabinoids (Marijuana), opiates, amphetamines, barbiturates, or alcohol. The report summary stated, "Toxicological examination of blood gave no indications that the person was under the influence of detectable psychoactive substances, including alcohol, at the time the sample was obtained.

Trial Court Opinion, (Nickleach, S.J.), 4/16/08, at 2–6.

¶ 3 In advance of trial, Anthony filed an omnibus pre-trial motion seeking suppression of all evidence gathered as a result of the traffic stop. Anthony's motion asserted that Trooper Bowser did not possess reasonable suspicion to conduct a stop based upon the purported violation of the Motor Vehicle Code he cited, as a consequence of which the evidence of impairment gleaned by the police was illegally obtained. Following an evidentiary hearing, Judge Nickleach denied Anthony's motion and the matter proceeded to a non-jury trial before the Honorable James J. Panchik. Judge Panchik found the defendant guilty of three counts of DUI–Controlled Substances, based upon the presence in his bloodstream of the metabolites noted above as well as impairment of his ability to drive. The court also found him guilty of a summary offense based upon the objects hanging from his mirror for which Trooper Bowser first stopped him. Subsequently, the court imposed sentence only on the DUI–Impairment conviction, 75 Pa.C.S. § 3802(d)(2), ordering the defendant to pay a fine and costs and to serve ninety days' to five years' imprisonment in the Armstrong County Jail. Thereafter, the court released the defendant on his own recognizance and stayed execution of the sentence pending appeal. Having filed his appeal, Anthony now raises the following questions for our review:

1. Did the trial court err by denying [Anthony's] Omnibus Pretrial Motion, in that the police officer did not have the requisite probable cause/reasonable suspicion to effectuate a vehicle stop?

2. There was insufficient evidence presented to convict [Anthony] of 75 Pa.C.S. § 3802(d)(2), in that there is no evidence in the record to indicate that the Appellant was under the influence of a drug or a combination of drugs.

Brief for Appellant at 2.

¶ 4 Anthony's first question challenges Judge Nickleach's decision denying the defendant's motion to suppress all evi-

dence obtained pursuant to the stop.[2] Brief for Appellant at 6. Our analysis of this question begins with the presumption that "[w]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." *Commonwealth v. Ruey*, 586 Pa. 230, 892 A.2d 802, 807 (2006) (Opinion Announcing the Judgment of the Court) (quoting *Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030, 1031 (1992)). If the trial court denies the motion, we must determine "whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. McClease*, 750 A.2d 320, 323 (Pa.Super.2000). In so doing, we may consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Maxon*, 798 A.2d 761, 765 (Pa.Super.2002). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts." *McClease*, 750 A.2d at 323–24.

¶ 5 Our Courts have recognized that "[b]ecause of the severe consequences of drunken driving in terms of roadway deaths, injuries, and property damage, ... the government has a compelling interest in detecting intoxicated drivers and removing them from the roads before they cause injury." *Commonwealth v. Sands*, 887 A.2d 261, 271 (Pa.Super.2005). Consistent with this recognition, the Pennsylvania Motor Vehicle Code prescribes "reasonable suspicion," rather than "probable cause" as the threshold for a lawful traffic stop. *See* 75 Pa.C.S. § 6308(b).

¶ 6 "[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *See Commonwealth v. Reppert*, 814 A.2d 1196, 1203 (Pa.Super.2002) (citing *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 677 (1999)). "The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a *'particularized and objective basis'* for suspecting the individual stopped." *Id.* (quoting *In re D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001)) (emphasis in *Reppert*). Therefore,

**2.** Before disposing of Anthony's challenge on the question of suppression, we acknowledge that his appeal also places at issue the legal sufficiency of the evidence. Our Supreme Court has directed that evidentiary sufficiency must be determined on the basis of all the evidence received, without regard to whether that evidence was in fact admissible. *See Commonwealth v. Reed*, 990 A.2d 1158, 1161 (Pa.2010) (reaffirming that to evaluate the sufficiency of the evidence "the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct."). In this instance, the evidence received by the trial court was indeed sufficient to sustain Anthony's convictions. *See Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005) (recounting standard for review of evidentiary sufficiency). Anthony's inability to complete multiple field sobriety tests, together with the troopers' observation of his physical symptoms of intoxication is sufficient to establish his guilt under 75 Pa.C.S. § 3802(d)(2) (impairment of the individual's ability to safely drive). Nevertheless, as demonstrated by the following discussion, that evidence was the fruit of an unlawful stop and was not properly admitted.

the fundamental inquiry of a reviewing court must be an objective one, "namely, whether 'the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *Id.* (quoting *Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153, 1156 (2000)).

¶ 7 In support of his challenge to the trial court's order, Anthony asserts that Trooper Bowser lacked the requisite suspicion to stop him, as the condition the trooper cited, *i.e.,* three air fresheners hanging from his interior rearview mirror, is not unlawful and, in itself, is not sufficient basis for a traffic stop. In support, Anthony cites this Court's decisions in *Commonwealth v. Felty,* 443 Pa.Super. 559, 662 A.2d 1102 (1995), and *Commonwealth v. Benton,* 440 Pa.Super. 441, 655 A.2d 1030 (1995), determining under what conditions police may stop a motorist for suspected violation of 75 Pa.C.S. § 4524(c) (Windshield obstructions and wipers). Anthony argues that in those cases we held that perceived violations based on the presence of objects hanging from a motorist's rearview mirror constitute reasonable suspicion for a stop only if the officer's observations suggest that the objects "materially obstruct, obscure or impair the driver's vision through the front windshield." Brief for Appellant at 6 (citing 75 Pa.C.S. § 4524(c)). Anthony acknowledges that Trooper Bowser purported to stop him for violation of a different code section (75 Pa.C.S. § 4107(b)(2) as implemented at 67 Pa.Code § 175.68(c)(4)), but contends that our interpretations in *Felty* and *Benton* are nevertheless controlling as the language of the administrative code section at issue is substantially the same as that of 75 Pa.C.S. § 4524(c). Brief for Appellant at 7.

¶ 8 We agree with Anthony's assertion that the language of the administrative code substantially tracks the language of the Motor Vehicle Code that we interpreted in *Felty* and *Benton.* Motor Vehicle Code section 4524(c) proscribes "any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard." 75 Pa.C.S. § 4524(c). Similarly, section 175.68(c)(4) of the administrative code requires that "[n]o object or material may be hung from the rearview mirror and no object or material may be hung, placed or attached in a position so as to materially obstruct, obscure or impair the driver's vision through the windshield or constitute a safety hazard." 67 Pa.Code § 175.68. Accordingly, we see no reason why our holdings in *Felty* and *Benton* prescribing a threshold level of observation to demonstrate reasonable suspicion under 75 Pa. C.S. § 4524(c) should not also apply to stops made pursuant to 75 Pa.C.S. § 4107(b)(2) as implemented at 67 Pa.Code § 175.68(c)(4). We hold accordingly that to sustain a stop pursuant to any of those sections, the arresting officer's observations must establish not merely the presence of an object hanging from the rearview mirror, but must raise reasonable suspicion that the object materially obscured, obstructed or impaired the driver's vision through the front windshield.

¶ 9 At suppression, Judge Nickleach determined that Bowser's observations established reasonable suspicion of a violation of 75 Pa.C.S. § 4107(b)(2), but offered no elaboration of that point. Trial Court Opinion, (Nickleach, S.J.), 4/16/08, at 1–2. Following review of the notes of testimony taken at the suppression hearing, we do not find adequate support for the court's conclusion on this point. Rather, we find Trooper Bowser's observations preceding

the stop inadequate to demonstrate reasonable suspicion consistent with the standard enunciated in *Felty* and *Benton.* Trooper Bowser testified that he made his observations after dark only with the aid of street lighting. N.T., Omnibus Pretrial Motion, 7/27/07, at 17. In response to counsel's question, "[w]hat is it that you saw exactly as [Anthony's car] passed you?," Bowser responded "I just saw an object hanging off the rearview mirror." *Id.* at 18. By his own admission, the trooper was unaware of the nature of the object as the car passed and premised his stop on his understanding of section 4107(b)(2) and the accompanying regulations. *Id.* at 6 ("In particular, there's a regulation under the inspection regulations that states that no object can hang from the rearview mirror of a vehicle.").

¶ 10 When probed for greater precision on the nature of the "object" and asked to describe its size, the trooper estimated the object at varying sizes, stating that it was "probably six to eight inches tall, maybe three, four inches wide," and eventually resorted to using his hands to approximate the size, which counsel and the court both recognized could not be documented of record. *Id.* at 18, 19 (BY THE COURT: I don't know what that does in the record[,] that tall[,] that wide) In fact, the object the trooper had seen was merely a gaggle of the ubiquitous pine tree-shaped air fresheners commonly marketed for use in automobiles. *Id.* at 18. There were three of them, they were flat, and they hung together at the same level; they were not hanging in sequence. *Id.* at 19–20.

¶ 11 More to the point, however, the trooper's observations were the product of the stop itself; he did not make detailed observations of the character of the object before making the stop. Rather, he acted on the basis of an incomplete understanding of the regulation at 67 Pa.Code § 175.68. Contrary to Trooper Bowser's belief, that section clearly limits the prohibition on objects hanging from the rearview mirror to those "placed or attached in a position so as to materially obstruct, obscure or impair the driver's vision through the windshield or constitute a safety hazard." Extending our holdings in *Felty, supra,* and *Benton, supra,* as stated above, Trooper Bowser was permitted to stop Anthony's vehicle only if he could articulate observations in support of the stop that validated a reasonable suspicion that the object hanging from the rearview mirror materially obscured, obstructed or impaired the driver's vision through the front windshield. He failed to do so. Accordingly, we deem the stop unlawful. Thus, the trial court erred in denying Anthony's suppression motion. Because all of the evidence produced by the Commonwealth was obtained as a result of a single unlawful stop, the charges at issue in this appeal must be dismissed and the defendant discharged.

¶ 12 For the foregoing reasons, we reverse the judgment of sentence.

¶ 13 Judgment of sentence **RE-VERSED.** Defendant **DISCHARGED.** Jurisdiction **RELINQUISHED.**