J-S56019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESUS ANGEL JUAREZ-PANJOTA, | : | |
| | : | |
| Appellant. | : | No. 407 MDA 2018 |

Appeal from the Judgment of Sentence, February 9, 2018,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0001444-2017.

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:             **FILED DECEMBER 07, 2018**

Jesus Angel Juarez-Panjota appeals a judgment of sentence of one year probation, following a non-jury conviction on three drug-possession offenses.[1] He challenges the constitutionality of the Commonwealth's physical evidence, which a Pennsylvania State Policeman seized during a traffic stop.  For the reasons below, we affirm.

The parties agree on the facts, which Trooper Frank Gawel recounted at the suppression hearing.  The dashboard camera on his cruiser also recorded the traffic stop and collaborated his recollection.

On a February afternoon in 2017, Juarez-Panjota, high on marijuana, drove his sedan, a Chevrolet Malibu, upon a state highway.  Extraordinarily large, rear tires protruded beyond the Malibu's body and fenders.

---

[1] 35 P.S. §780-113(A)(16).

Trooper Gawel was sitting in his cruiser on the roadside, when Juarez-Panjota drove by him. Believing that the Malibu's oversized tires violated Pennsylvania's Vehicle Code, the trooper pulled out and followed the car for about five minutes. From behind the Malibu, Trooper Gawel could tell that its "fender did not cover the wheels and tires." N.T., 8/28/17, at 5-7. He initiated a traffic stop.

Upon approaching the car, Trooper Gawel smelled freshly burnt marijuana, arrested Juarez-Panjota, and searched the vehicle. That search uncovered various drugs stashed throughout the Malibu.

Juarez-Panjota filed a motion to suppress those drugs, on the grounds that the trooper did not have probable cause to stop him for a Vehicle Code violation. At the suppression hearing, Trooper Gawel testified that the Malibu's protruding tires violated "the Vehicle Code [at section] 4107(b)(2), which then refers to the PA Code 67, Inspection, Regulations and violations . . . under Section 175 [b]." *Id.* at 7.

After defense counsel challenged the trooper's lack of familiarity with the Vehicle Code on cross-examination, the Commonwealth rehabilitated him by highlighting that Trooper Gawel relied upon "a short guide . . . a condensed form of the vehicle code." *Id.* at 12. As he flipped through this book on the stand, the trooper then cited "two other sections here under tires and wheels, which would be 175.65, which also then falls under 177.5 under the fender section." *Id*. The prosecutor then asked:

You could have gone with either one?

> **A:** As far as I am aware, both apply to the situation. I chose fender.

*Id.*

Agreeing with the trooper that Juarez-Panjota's car displayed signs of a Vehicle Code violation, the suppression judge denied the motion to suppress. She said, "I am satisfied that . . . a traffic stop must be supported either by probable cause or a reasonable suspicion of a criminal violation . . . ." *Id.* at 20. The judge further opined that:

> [t]here is a violation of the Vehicle Code regarding tire width and protrusion, as I read not only the Vehicle Code section relied on, but the underlying regulations on which that Vehicle Code section is based. Therefore, I am satisfied that the stop was legal, in that it was based on a reasonable suspicion that that violation had occurred.

*Id.* at 21.

The court later convicted Juarez-Panjota on various possession counts and sentenced him to one year of probation. This appeal followed.

Juarez-Panjota presents three issues for appeal. First, he says that the suppression court applied an unconstitutional standard of review – namely, reasonable suspicion. *See* Juarez-Panjota's Brief at 3. Second, he asks whether "a mistake of law can provide the objectively reasonable grounds for probable cause?" *Id.* Third, if the trooper honestly misinterpreted the Vehicle Code, Juarez-Panjota points out that the state constitution – unlike its federal counterpart – does not allow for a good-faith exception to the warrant requirement. *See id.*

These issues form a three-pronged theory, and Juarez-Panjota must win each of them in order to succeed on appeal. Essentially, he argues that:

1. a protruding-tires violation requires courts to apply the probable cause standard;

2. Trooper Gawel had no probable cause, because a protruding-tires violation does not exist for sedans; and

3. Trooper Gawel's *bona fide* misinterpretation of the law does not excuse his failure to procure a warrant under Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania.

Because Juarez-Panjota's second point rests upon an incorrect reading of the Vehicle Code and disposes of this appeal, we will address only that issue.

At the heart of his second appellate issue, Juarez-Panjota claims that there is no violation for driving a sedan with tires that extend beyond its fender. He believes that the Pennsylvania Department of Transportation's ("PennDoT") regulation prohibiting overly-wide tires only applies to heavy trucks and buses. The court of common pleas and the Commonwealth both disagree with Juarez-Panjota's reading of the regulations. We do, too.

Interpreting the Vehicle Code and PennDoT's regulations in pursuance thereof presents a pure question of law. Thus, "our scope of review is plenary, and the standard is *de novo*." **Commonwealth v. Cooper**, 27 A.3d 994, 998 (Pa. 2011). **See also Ramalingam v. Keller Williams Realty Group, Inc.**, 121 A.3d 1034, 1042 (Pa. Super. 2015) (indicating that this Court reviews "code provisions" *de novo*).

Trooper Gawel stopped Juarez-Panjota's Malibu, because he saw that its rear tires extended outside the fenders. PennDoT has forbidden sedans from passing inspection if a tire's "tread extends beyond the outer edge of the wheel housing inclusive of fender flares." 67 Pa.Code § 175.80(e)(1)(ix). The "tread" is "[t]hat portion of the tire that comes into contact with the road." 67 Pa.Code § 102 (definition of "Tread").

Moreover, PennDoT requires that a sedan's "[t]ires and wheels shall be in safe operating condition as described in § 175.80." 67 Pa.Code § 175.65. Thus, PennDoT, in its expertise as the regulating agency of vehicles in this Commonwealth, has determined that protruding-tires render a car unsafe for driving. Hence, Juarez-Panjota's Malibu was an unsafe car, equipped with tires in violation of PennDoT regulations.

The General Assembly, in turn, has outlawed the driving of any vehicle that violates PennDoT's regulations on the Commonwealth's roadways. "It is unlawful for any person to . . . [o]perate . . . on any highway in this Commonwealth any vehicle . . . which is not equipped as required under this part or under department regulations . . . ." 75 Pa.C.S.A. § 4107(b)(2) (relating to unlawful activates on the highways). If Juarez-Panjota's tires were wider than his fenders, he committed a violation under Section 4107(b)(2).

Thus, we fully agree with the learned Court of Common Pleas Judge Margaret C. Miller, who correctly held:

> Regardless of whether Trooper Gawel included an inaccurate citation in [the] criminal complaint, or misspoke while testifying, the fact remains that the vehicle stop at issue was

> neither based upon mistake of fact nor law. [Juarez-Panjota] was stopped for operating a vehicle with illegal and unsafe equipment, because the vehicle's tires extended beyond the vehicle's fender.

Trial Court Opinion, 5/8/16, at 16.

At the suppression stage, we are concerned with the facts as Trooper Gawel (and his dashboard camera) related them, not whether he cited the exact sections of the Vehicle Code and PennDoT regulations in the criminal complaint or on the stand. Here, the trooper credibly described the tires, their size, and their protrusion beyond the fenders.

Having established that sedans tires have a size-limit under the law, we now consider whether Trooper Gawel had grounds to stop Juarez-Panjota's vehicle for his oversized tires. In doing so, our scope of review is limited to only the *suppression-hearing evidence*[2] of the prevailing party (here, the Commonwealth) and the uncontradicted evidence of the losing party. **See Commonwealth v. Ranson**, 103 A.3d 73, 76 (Pa. Super. 2014). However, because Trooper Gawel failed to obtain a search warrant prior to stopping and searching Juarez-Panjota's vehicle, the suppression court's ruling that the trooper possessed "reasonable suspicion and probable cause should be

---

[2] Throughout his brief, Juarez-Panjota makes multiple references to the non-jury and sentencing hearing transcript. **See, e.g.,** Juarez-Panjota's Brief at 6, 24. These references are irrelevant. The Supreme Court of Pennsylvania has made clear that, when considering claims of a suppression court's errors, our scope of review is "limited to the factual findings and legal conclusions of the suppression court." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013). **See also Commonwealth v. Cruz**, 166 A.3d 1249, 1254 (Pa. Super. 2017), **appeal denied**, 180 A.3d 1207 (Pa. 2018).

reviewed *de novo* on appeal." ***Ornelas v. United States***, 517 U.S. 690, 699 (1996). ***See also Commonwealth v. Davis***, 188 A.3d 454, 458 (Pa. Super. 2018).

Under the Fourth Amendment to the Constitution of the United States, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . ." Likewise, Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania dictates that:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

"As a general rule, a search conducted without a warrant is presumed to be unreasonable unless it can be justified under a recognized exception to the search warrant requirement." ***Commonwealth v. Agnew***, 600 A.2d 1265, 1271 (Pa. Super. 1991). One exception to the warrant requirement is the vehicle exception, because, in most cases, a vehicle can drive away, provided the Commonwealth can demonstrate that the stopping/searching officer had the required level of suspicion to justify the stop and/or search. ***See Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014) (plurality opinion).[3]

---

[3] In ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014) (plurality opinion), four Justices agreed, albeit on differing grounds, that Pennsylvania should adopt the federal standard for vehicle searches. Thus, only probable cause is

Law enforcement must, depending upon "the nature of the violation" in question, possess either reasonable suspicion or probable cause to initiate a traffic stop. *Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015).

To prove reasonable suspicion, the Commonwealth need only show that an officer made "specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Anthony*, 1 A.3d 914, 919 (Pa. Super. 2010).

On the other hand, an officer possess probable cause:

> when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.
>
> It is the facts and circumstances within the personal knowledge of the police officer that frames the determination of the existence of probable cause.

*Id.* at 996–97 (citations and quotation marks omitted). Thus, the suspicion required for reasonable suspicion is only that the person detained be involved

---

now required to search a vehicle, rather than probable cause and an additional exigent circumstance.

in criminal activity, whereas probable cause requires reasonable belief that a person committed or is committing a crime.

We need not decide the constitutional question of which standard applies to the violation at bar, because Trooper Gawel had probable cause. There is no dispute that the protruding tires of Juarez-Panjota's vehicle were clearly visible to Trooper Gawel at the time he made this traffic stop. Thus, it was reasonable for the trooper to believe that the driver of the Malibu was committing a protruding-tires violation of the Vehicle Code as he drove down the highway. In fact, defense counsel, after watching the video of the traffic stop at the suppression hearing, acknowledged seeing the "tires sticking out." N.T., 8/28/18, at 18. If the tires' treads had not protruded beyond the Malibu's fenders, then the trooper and defense counsel would not have seen them "sticking out" beyond the sides of the car. *Id.*

Upon *de novo* review, we conclude that Trooper Gawel had ample probable cause to believe Juarez-Panjota's tires violated 67 Pa.Code § 175.80(e)(1)(ix) and, by extension, 67 Pa.Code § 175.65 and 75 Pa. C.S.A. § 4107. Hence, we have no need to decide whether the higher or lower standard of constitutional scrutiny applies to 67 Pa.Code § 175.80(e)(1)(ix), because Trooper Gawel articulated sufficient facts to clear the higher hurdle of probable cause.

Moreover, whether probable cause or reasonable suspicion existed at the time a police officer stops someone or conducts a search "is predominately an objective inquiry." *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011)

(quotations and citations omitted). The Supreme Court of the United has made clear that, in most cases, courts must:

> ask whether "the circumstances, viewed objectively, justify [the challenged] action." ***Scott v. United States***, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). If so, that action was reasonable "whatever the subjective intent" motivating the relevant officials. ***Whren v. United States***, 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts, ***Bond v. United States***, 529 U.S. 334, 338, n. 2, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000); and it promotes evenhanded, uniform enforcement of the law, ***Devenpeck v. Alford***, 543 U.S. 146, 153–154, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

***Id.*** at 731.

Thus, it does not matter which PennDoT regulations Trooper Gawel subjectively believed Juarez-Panjota had violated when he pulled the Malibu over, when he filled out the criminal complaint, or when he testified at the suppression hearing. In a random traffic stop such as this one, all that matters are the facts, as the common pleas judge found them to be, and whether those facts, objectively speaking, add up to probable cause or reasonable suspicion. A trooper's subjective mistake of law is irrelevant.

Thus, Juarez-Panjota's second claim of error is without merit, because his tires presented visual evidence, objectively speaking, to warrant a person of reasonable caution to believe that their tread extended "beyond the outer edge of the wheel housing inclusive of fender flares." 67 Pa.Code § 175.80(e)(1)(ix). We arrive at the same conclusion as the suppression court – this traffic stop was constitutional.

- 10 -

Because Juarez-Panjota's success in this Court depended on the success of all three of his appellate issues and his second has failed him, we need not address his first and third issues.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/07/2018