J-A02024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK ALEXANDER CRESSWELL | : | |
| | : | |
| Appellant | : | No. 1069 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 31, 2019
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0001798-2017

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 14, 2020**

Appellant, Mark Alexander Cresswell, appeals from the judgment of sentence entered on May 31, 2019, following his bench trial convictions for theft by unlawful taking, receiving stolen property, theft from a motor vehicle, possession of a small amount of marijuana, and possession of drug paraphernalia.[1]  Upon review, we affirm.

The suppression court[2] summarized the facts of this case as follows:

---

[1]  18 Pa.C.S.A. §§ 3921, 3925, and 3934 and 35 P.S. §§ 780-113(a)(31) and 780-113(a)(32), respectively.  Appellant was also convicted of carrying a firearm without a license pursuant to 18 Pa.C.S.A. § 6106.  However, that conviction was subsequently vacated upon Appellant's post-sentence motion for relief because the Commonwealth failed to prove the subject firearm was operable.

[2]  As discussed below, Appellant filed an omnibus pre-trial motion seeking suppression of evidence.  The trial court held an evidentiary hearing regarding

[On August 18, 2017, at approximately 10:30 a.m.,] Trooper [Joseph] Snyder observed an SUV travelling toward him on State Route 208 in Pine Township, Mercer County, Pennsylvania. The day was clear and sunny.

\* \* \*

Trooper Snyder observed a cluster of air fresheners hanging from the rearview mirror of the SUV. Trooper Snyder believed that this cluster of air fresheners materially obstructed the driver's view.

\* \* \*

Ultimately Trooper Snyder turned around, followed the SUV, and stopped it. Once behind the SUV, Trooper Snyder observed that the SUV's license plate frame blocked the word ["]Pennsylvania.["]

After stopping the SUV, the trooper approached the vehicle and smelled marijuana. Based on this [observation], the trooper conducted a search of the vehicle and found marijuana under the driver's seat and in an [ammunition] case next to [Appellant] in the backseat. He also found a firearm in the center console with the magazine in the glove compartment.

While the operator of the SUV was taken by Trooper Snyder to the local hospital for a blood draw, [Appellant] was taken to the Pennsylvania State Police Mercer barracks. Trooper Snyder returned to the barracks about one hour after the stop and found [Appellant] who had been placed uncuffed in an interview room.

Suppression Court Opinion, 5/11/2018, at 15-17.

_____

suppression on April 4, 2018 before the Honorable Robert G. Yeatts. After the suppression court denied Appellant relief, the matter proceeded to a non-jury trial before the Honorable Christopher J. St. John on March 22, 2019. For clarity and ease of discussion, we will refer to the tribunals as the suppression court and trial court, respectively.

Thereafter, Trooper Snyder read Appellant his **Miranda**[3] rights and Appellant answered questions. Initially, Appellant alleged that the driver of the SUV stole the firearm that the police recovered. Appellant admitted that he and the driver of the SUV fired the recovered firearm earlier. The driver of the SUV showed police a Snapchat video, from his cellular telephone, showing Appellant wielding the firearm in question.[4] Appellant subsequently admitted that the firearm was his. The firearm had been reported stolen.

The Commonwealth charged Appellant, *inter alia*, with the aforementioned crimes. On January 19, 2018, Appellant filed an omnibus pre-trial motion alleging, *inter alia*, that the traffic stop was illegal and the evidence obtained therefrom required suppression.[5] The suppression court held an evidentiary hearing on April 4, 2018 and denied relief by order and opinion on May 11, 2018. Appellant filed a motion to reconsider suppression. The suppression court granted relief by holding another evidentiary hearing to hear additional testimony. On January 11, 2019, the suppression court again denied relief. The case proceeded to a non-jury trial on March 22, 2019. The trial court convicted Appellant of the aforementioned crimes, as well as

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[4] Trooper Snyder confiscated the driver's cellular telephone, obtained a search warrant for its contents, but could not unlock it. As a result, he was unable to obtain the video.

[5] Appellant had standing to challenge the traffic stop and to file a suppression motion. **See Commonwealth v. Shabezz**, 166 A.3d 278, 286 (Pa. 2017).

carrying a firearm without a license.[6]   On May 31, 2019, the trial court sentenced Appellant to an aggregate term of six to 23 months of incarceration followed by a two-year term of probation.[7]   The trial court re-sentenced Appellant on June 27, 2019 to the same term of incarceration, but imposed the sentence on Appellant's conviction for theft by unlawful taking.  This timely appeal resulted.[8]

On appeal, Appellant presents a sole issue for our review:

Whether the [trial] court erred in not suppressing the traffic stop for a front windshield obstruction when there was no evidence that the object hung from the rearview mirror materially obstructed, obscured or impaired the driver[']s vision or in any manner constituted a safety hazard[?]

Appellant's Brief at 2.

---

[6]   As previously noted, however, the trial court subsequently vacated Appellant's conviction for carrying a firearm without a license because the Commonwealth failed to prove the subject firearm was operable.

[7]   Both Appellant and the Commonwealth filed post-sentence motions challenging the sentence imposed.  The trial court held a hearing on June 27, 2019 and vacated the prior sentence and, as previously mentioned, overturned Appellant's conviction for carrying a firearm without a license.

[8]  Appellant filed a notice of appeal on July 17, 2019. On July 18, 2019, the trial court filed an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied timely on July 29, 2019.  On August 28, 2019, the trial court ordered Appellant to file an amended Rule 1925(b).  Appellant complied timely on September 3, 2019.  On September 16, 2019, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), relying upon the suppression court's decision under the coordinate jurisdiction rule or law of the case.  *See Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003) (transferee trial judge may not alter resolution of legal question previously decided by transferor judge).

Relying principally upon this Court's decision in **Commonwealth v. Anthony**, 1 A.3d 914 (Pa. Super. 2010) and our Supreme Court's decision in **Commonwealth v. Holmes**, 14 A.3d 89 (Pa. 2011), Appellant contends that the suppression court erred by denying suppression "since [] Trooper [Snyder] did not testify as to how the air fresheners materially obstructed the driver's view." **Id.** at 10. He claims that Trooper Snyder's "attempt[] to compare the dimensions of the 'cluster of air fresheners' with the [mobile video recorder (MVR)] in his own vehicle [] failed [to show] how the air fresheners materially impaired the driver's view." **Id.** at 23. He further claims that Trooper Snyder's testimony was not credible, because:

> The Trooper's [recollection of the] dimensions of the air fresheners [was] not only inaccurate, but he also has no recollection as to the color or the exact number. In addition, the Trooper did not measure the air fresheners, did not seize them (provided there was more than one), nor did he photograph them. His testimony [] is not credible given these deficiencies.
>
> The three occupants of the vehicle testified at the October 24, 2018 [s]uppression hearing that there was a single air freshener, and identified the air freshener, produced by [the driver] at the [h]earing, as the one that hung on the rearview mirror at the time of the traffic stop. [The driver] testified that he installed the air freshener in such a way that the height was only 3 ¾ [inches] to 4 [inches], since the tip of the air freshener sat up behind the rearview mirror. He testified that the air freshener did not obstruct his view through his front windshield, which he said was approximately 5 [feet] in width or across and 3 [feet] in height. He also testified that Trooper Snyder told him that it was illegal to hang air fresheners from the rearview mirror. Their respective testimony is uncontroverted and in contradiction to the testimony of Trooper Snyder. Their testimony is also more credible, nothwithstanding the court's assessment, because the actual air freshener at issue was produced by [the driver], who was already sentenced and had no reason to lie.

*Id.* at 18-19 (record citations omitted).  As such, Appellant contends:

> If this Court affirms the lower court['s decision,] it will [not] only universally permit and invite police to stop every car or truck wherein an air freshener is hanging from the rearview mirror, but it will also establish an arbitrary and capricious standard for said stops, thereby allowing police to conduct traffic stops on a multitude of vehicles with similar or lesser items hanging from the vehicle's rearview mirror.

*Id.* at 31.

Our decision in ***Commonwealth v. Shabazz***, 18 A.3d 1217 (Pa. Super. 2011) provides guidance.  In that case, this Court held that a combination of multiple pine-tree shaped air fresheners and foam dice measuring three by three inches, hanging from a rearview mirror, gave police reasonable suspicion to conduct a traffic stop for windshield obstructions under 75 Pa.C.S.A. § 4524(c).  In ***Shabazz***, we previously determined:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Those properly supported facts are binding upon us and we may reverse only if the legal conclusions drawn therefrom are in error.
>
> ***Commonwealth v. Dixon***, 997 A.2d 368, 372–373 (Pa. Super. 2010) (*en banc*), *quoting* ***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (internal quotes and citations omitted). "The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." ***Commonwealth v. Holmes***, 14 A.3d 89, 94 (Pa. 2011).

The Vehicle Code permits a police officer to initiate a traffic stop when he or she possesses reasonable suspicion that a section of the Code has been or is being violated.

### § 6308. Investigation by police officers

(**b) Authority of police officer.—**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308. The Commonwealth bears the burden of establishing the validity of the stop. "Thus, under the present version of Section 6308(b), in order to establish reasonable suspicion, an officer must be able to point to **specific and articulable facts** which led him to reasonably suspect a violation of the Motor Vehicle Code...." ***Holmes***, ***supra*** at 95–96 (emphasis in original).

[In ***Shabazz***], at the suppression hearing, the Commonwealth sought to establish through testimony of the arresting officer that the officer possessed reasonable suspicion to believe [Shabazz] was in violation of 75 Pa.C.S.A. § 4524(c) at the time of the traffic stop. The statute provides as follows.

**(c) Other obstruction.—**No person shall drive any motor vehicle with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard.

75 Pa.C.S.A. § 4524(c).

This Court has applied the foregoing principles to traffic stops premised on perceived violations of 75 Pa.C.S.A. § 4524(c). In ***Commonwealth v. Benton***, 655 A.2d 1030 (Pa. Super. 1995), we held a stop to be illegal where the officer did not present reasonable and articulable grounds for suspecting a violation of 75 Pa.C.S.A. § 4524(c). In that case, the officer professed a belief

- 7 -

that it was illegal to hang any object from a rearview mirror and provided no testimony that he was aware of the size or nature of the object at the time of the stop or how it materially impaired visibility through the windshield. ***Id.*** at 1034. ***Accord***, ***Commonwealth v. Felty***, 662 A.2d 1102 (Pa. Super. 1995).

\*       \*       \*

[Moreover, o]ur conclusion in [***Commonwealth v. Anthony***, 1 A.3d 914 (Pa. Super. 2010)] was premised, as in ***Benton***, on the officer's lack of an articulable and particularized description of the objects he observed hanging from the rearview mirror, and the impact of those objects on the visibility through the windshield. We did not hold, [however,] that the items that were ultimately deemed to be hanging from the driver's mirror were inadequate to support an inference of material obstruction as a matter of law. "More to the point, however, the trooper's observations were the product of the stop itself; he did not make detailed observations of the character of the object before making the stop." ***Anthony***, ***supra*** at 921.

Our Supreme Court has still more recently affirmed these principles in ***Holmes***, ***supra***, wherein the Court emphasized that the requirement that the police express specific and articulable facts in support of their suspicion is critical to enable the reviewing court to perform an independent assessment of the reasonableness of that suspicion.

> The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot.

***Holmes***, ***supra*** at 96 (citations omitted). "[I]n order to establish reasonable suspicion, an officer must articulate specific facts **in addition to inferences based on those facts**, to support his belief that criminal activity was afoot." ***Id.*** at 97 (emphasis in original).

Thus, the facts must be testified to in support of the reasonableness of the officer's suspicion occasioned by his or her pre-stop observations.

- 8 -

Under its plain language, a driver is not in violation of the statute simply because he has an object hanging from the rearview mirror; rather, an essential element is that the object or material hanging from the mirror materially obstructs, obscures, or impairs the driver's vision. Thus, while we agree with the Commonwealth that the law does not require that police be able to identify the object before making a vehicle stop, in order to support a suppression court's finding that an officer possessed reasonable suspicion to believe that a violation of 75 Pa.C.S.A. § 4524(c) has occurred, the officer must articulate at least **some** fact or facts to support his inference or conclusion that the object materially impaired the driver's view.

*Id.* (emphasis in original).

Were this Court to conclude that an officer's bare testimony that he saw an object hanging from a rearview mirror which obstructed the driver's view, without any additional testimony or other evidence supporting the officer's conclusion that the object materially obstructed the driver's view, was sufficient to demonstrate reasonable suspicion to constitutionally support the intrusion of a vehicle stop, we would obviate the suppression court's role in ensuring there is an objectively reasonable basis for the vehicle stop, and expose every law-abiding motorist who hangs an object from his or her rearview mirror to a potentially unwarranted intrusion.

*Id.* at 99.[9]

_____

9   Finally, our Supreme Court in **Holmes** stated:

[T]here are myriad objects which drivers commonly hang from their rearview mirrors. Air fresheners; parking placards; mortarboard tassels; crosses; rosary beads; medallions of St. Christopher, the patron saint of travel; and rabbits' feet are but a few. It is not illegal for a driver to hang such items from his or her rearview mirror, so long as the items do not materially obstruct the driver's view. The legislature could have written Section 4524(c) to prohibit a driver from hanging any object from the vehicle's rearview mirror, or it could have prohibited hanging

- 9 -

***Commonwealth v. Shabazz***, 18 A.3d 1217, 1219–1221 (Pa. Super. 2011)

(footnote omitted).

> In this case, the trial court determined:
>
> Trooper Snyder observed a cluster of air fresheners hanging from the rearview mirror of the SUV. Trooper Snyder believed this cluster of air fresheners materially obstructed the driver's view. He described this cluster as being two to three in number that were closer together at the top and fanned out wider at the bottom. He described the width of the clusters at the top as being two to three inches wide, at the bottom five to six inches wide and the length from bottom to top as two to three inches long. The air fresheners were arranged in a fanned out triangular shape.
>
> Trooper Snyder used as frame of reference his car's mobile video recorder (MVR) which is located beneath the rearview mirror and covers an area of two inches high, two inches wide, and four inches long. Trooper Snyder believes that anything covering an area greater than that materially obstructs a driver's view.

Suppression Court Opinion, 5/11/2018, at 16. The suppression court found

"the entirety of Trooper Snyder's testimony credible."[10]  ***Id.*** at 15.

---

> objects that obstruct a driver's view to any degree, but it did not; rather, it prohibited only material obstructions.

***Holmes***, 14 A.3d at 98–99.

[10]  This Court has stated:

> It is within the exclusive province of the suppression court to pass on the credibility of witnesses and determine the weight to be given to their testimony. This Court will not disturb a suppression court's credibility determination absent a clear and manifest error.

***Commonwealth v. Fudge***, 213 A.3d 321, 326 (Pa .Super. 2019) (citations and quotations omitted).

Accordingly, the suppression court concluded the traffic stop was supported by reasonable suspicion:

> Presently, before making the stop (on a clear and sunny day) the trooper was able to identify the objects that were hanging as being a cluster of two or three air fresheners that were fanned out in a triangle shape. He was able to give the dimensions of the cluster and was able to compare that to the MVR in his own vehicle. The [c]ourt must also consider 75 Pa.C.S.A. § 6308 which states in pertinent part that the officer must be able to point to specific and articulable facts which lead him to reasonably suspect a violation of the [M]otor [V]ehicle [C]ode. The [c]ourt finds that Trooper Snyder testified specifically about the size and nature of the objects he observed hanging from the rearview mirror. Thus, the [c]ourt finds that the stop of the SUV was valid.

*Id.* at 22.

Upon review of the certified record, we agree with the trial court that Trooper Snyder testified specifically about the size and nature of the objects that he observed hanging from the rearview mirror before he made the traffic stop. As such, we reject Appellant's reliance on *Anthony* and *Holmes*. Here, Trooper Snyder testified that the cluster of air fresheners was larger in size than the MVR found in his police car. The MVR was located in a similarly situated location to the air fresheners at issue, or just below the rearview mirror. Comparing the air fresheners to the MVR, Trooper Snyder determined that the air fresheners constituted a material obstruction. Here, the evidence showed that the objects, as observed before the traffic stop, appeared to materially obstruct, obscure, or impair the driver's vision through the windshield. We conclude that the information was sufficient for the trial court to independently evaluate whether Trooper Snyder had reasonable suspicion

to conduct a traffic stop because the subject vehicle was in violation of Section 4524(c). Finally, the suppression court ultimately credited Trooper Snyder's version of events and we will not disturb that determination, as there was no clear and manifest error in doing so. We conclude that the record supports the suppression court's factual findings and legal conclusions. Accordingly, Appellant was not entitled to suppression and, as a result, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2020